IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

KARA A. PARTIN,
        Plaintiff,

v.                                                       Civil Action No. 3:21cv713

NUWAVE, LLC,
        Defendant.

## OPINION

This matter comes before the Court on Defendant NuWave, LLC's ("NuWave") partial motion to dismiss Plaintiff Kara A. Partin's complaint. (ECF No. 8.) NuWave moves to dismiss Partin's breach of the implied warranty of merchantability claim (Count Two) because NuWave disclaimed such a warranty pursuant to Virginia law. (ECF No. 9, at 2.) Partin asserts that NuWave's attempted disclaimer is not conspicuous as a matter of law. (ECF No. 11, at 3, 6.) On Wednesday, March 23, 2022, the Court held a hearing on the motion. For the reasons stated from the bench and set forth below, the Court agrees that NuWave's disclaimer is not conspicuous. Accordingly, it will deny NuWave's motion.

## I. BACKGROUND[1]

In 2017, someone purchased a NuWave 6Q Pressure Cooker (Model Number 33101) for Partin's housemate. (ECF No. 1, at 2, 5.) Over the next several years, Partin "used the . . . pressure cooker on many occasions" without incident. (*Id.* at 5.) On or around June 20, 2021, "Partin used the . . . pressure cooker to make beef stew," by pressure-cooking beef tips. (*Id.*) Instead of dinner,

---

[1] Because NuWave filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true the facts in Partin's complaint and draws all reasonable inferences in her favor for purposes of this Opinion. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)).

however, Partin ended up with "serious burns, injuries[,] and damages." (*Id.*)

"When the device indicated that [Partin's] stew was cooked, [she] released the steam from the device until the device indicated that it was safe to open the lid." (*Id.*) Partin then unlocked the lid and, as soon as she did so, "the lid burst open and the contents of the pot exploded all over [her] body." (*Id.*)

The NuWave 6Q Pressure Cooker ("NuWave 6Q") "includes a cooking pot and a lid that is intended to lock into place at the top of the pot. When the pot is heated, steam is sealed inside, creating high pressure. With this high pressure, the internal temperature of the pot is raised above the boiling point of water." (*Id.* at 2.) To ensure the safety of pressure cooker users, the NuWave 6Q has several safety features including "a food blocking cap, [a] lid lock function, [a] lid lock[,] and a final bottom pressure switch to ensure that the [pot] will only pressurize if the lid is securely fastened and keep[ users] from opening the lid before the pressure reaches a safe level." (*Id.* at 3.) Put plainly, once the user releases the steam, the pot depressurizes itself, tells the user when it has safely depressurized, and, until that occurs, the user is not supposed to be able to open the pot. (*Id.* at 3–5.)

Partin sued NuWave on November 11, 2021, for breach of express warranty (Count One) and, as relevant to NuWave's current motion, breach of the implied warranty of merchantability (Count Two). As to Count Two, Partin asserts that the pressure cooker "was unreasonably dangerous for its ordinary use or reasonably foreseeable use because it[]s lid was capable of opening and did open after it was properly and completely closed while the unit was still pressurized." (*Id.* at 8.) Partin attached one exhibit to her complaint: the first thirty-two pages of the NuWave Nutri-Pot 6Q Digital Pressure Cooker Owner's Manual & Complete Recipe Book

2

("the Manual"). (ECF No. 1-2.)[2]

On February 7, 2022, NuWave moved to dismiss Count Two of Partin's complaint.[3] (ECF No. 8.) NuWave asks the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Civil Rule 7(F), to dismiss Partin's breach of the implied warranty of merchantability claim (Count Two) with prejudice. (ECF No. 9.) NuWave states that "[a]s permitted under Virginia Code § 8.2-316(2), NuWave disclaimed any implied warrant of merchantability with the required language and in writing that was conspicuous." (*Id.* at 2.) In response, Partin argues that NuWave's motion is "premature" and that defendants must plead affirmative defenses, such as a warranty disclaimer, in an answer. (ECF No. 11, at 2–3.) Partin also argues that NuWave's disclaimer is not conspicuous and thus ineffective as a matter of law. (*Id.* at 6.) NuWave asserts the Court should consider its argument because Partin made the Manual "central to this case." (ECF No. 12, at 2.)

## II. LEGAL STANDARD

### *A. Motion to Dismiss*

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Edwards*, 178 F.3d at 243. When considering a motion to dismiss under Rule 12(b)(6), a court must accept all allegations in the complaint as true, drawing all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet,* 591 F.3d at 253 (citing *Edwards*, 178 F.3d at 244). This principle does not extend to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when

---

[2] Partin also attached the Manual to her response to NuWave's motion. (ECF No. 11-1.)

[3] That same day, NuWave filed its answer, wherein it denies generally Partin's claims and asserts numerous affirmative defenses. (ECF No. 10.)

3

accepted as true, state a facially plausible claim for relief. *Id.* at 663. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

A warranty disclaimer is an affirmative defense. *Williams v. Gradall Co.*, 990 F. Supp. 442, 446 (E.D. Va. 1998). "[C]ourts do not generally assess the merits of affirmative defenses at the 12(b)(6) stage,[4] but when a defendant presents exhibits that clearly demonstrate a defense's validity, the plaintiff herself has made those exhibits central to the dispute, and the exhibits are evidently authentic, courts may rely on those documents in granting a motion to dismiss." *Burkhead v. Wachovia Home Mortg.*, No. 3:12cv832, 2013 WL 2156472, at *2 (E.D. Va. May 17, 2013); *see also Brooks v. City of Winston–Salem*, 85 F.3d 178, 181 (4th Cir. 1996) ("Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense.").

Here, Partin attached the Manual at issue to her complaint and to her response in opposition to NuWave's motion to dismiss. Partin made the Manual central to the dispute, and she does not argue that the document is inauthentic. Accordingly, the Court will consider the merits of NuWave's motion. *See George v. Bromwell's – The Fireplace People, LLC*, 425 F. Supp. 3d 632, 365–67 (E.D. Va. 2019) (merits denial of a motion to dismiss based on defendant's argument that

---

[4] "The purpose of a Rule 12(b)(6) is to test the sufficiency of a complaint," not to "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Edwards*, 178 F.3d at 243 (internal citations omitted).

4

instruction manual disclaimed implied warranties).

### B. Warranty Disclaimers

"Under Virginia Law, to disclaim, modify, or limit an implied warranty [of merchantability], the language must be in writing, be conspicuous, and mention the word 'merchantability.'" *Walker v. All. Outdoor Grp., Inc.,* No. 3:20cv773, 2021 WL 4887972, at *4 (E.D. Va. Oct. 19, 2021) (citing Va. Code Ann. § 8.2-316(2) (West)). The parties agree that NuWave's attempted disclaimer is in writing and includes the word "merchantability." (ECF No. 9, at 6; ECF No. 11, at 8; *see also* ECF No. 11-1, at 30.) Thus, the only issue before the Court is whether the writing is conspicuous.

Section 8.1A-201(b)(10) of the Virginia Code defines "conspicuous," as:

> **so written, displayed, or presented that a reasonable person against whom it is to operate ought to have noticed it** . . . Conspicuous terms include the following: (A) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and (B) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

(emphasis added). "Whether a term is 'conspicuous' or not is a decision for the court." *Id.* Although § 8.1A-201(b)(10) provides a court with helpful guidance, the examples of conspicuousness listed in § 8.1A-201 "are not safe harbors." *Benedict v. Hankook Tire Co.,* 295 F. Supp. 3d 632, 656 (E.D. Va. 2018). "Rather, what is required is a holistic assessment of whether a reasonable person 'ought to have noticed' the term at issue."[5] *Id. at 656.*

---

[5] [T]he official comments to Va. Code § 8.1A–201 make clear that a holistic approach is warranted and that the statutory examples are not dispositive. Official comment 10 states that, "[a]lthough these paragraphs indicate some of the methods for making a term attention-calling, *the test is whether attention can reasonably be expected to be called to it.*" Va. Code § 8.1A–201 cmt. 10 (emphasis added). It further asserts that "*[t]he statutory language should not be construed to permit a*

5

### III. DISCUSSION

NuWave says the following aspects of the disclaimer make it conspicuous: (1) the disclaimer appears on a page with a large, "attention-grabbing" header; and (2) "the operative text . . . is written in [all caps], which is . . . differentiated from [the] surrounding . . . text." (ECF No. 9, at 6.) At the hearing, NuWave also argued that the Manual's table of contents includes a header titled "warranty," which directs users to page thirty and the disclaimer. NuWave concedes that "the language is found on page [thirty] of [thirty-two] of [the Manual]," but it says that "the reader is invited to [read all instructions] on page [seven and] that the text comes after several pages of instructions and a troubleshooting guide (and before a number of recipes)." (*Id.*) NuWave also asserts that several cases support its argument. The Court finds, however, that the cases are each readily distinguishable.[6]

---

*result that is inconsistent with that test.*" *Id.* (emphasis added).

*Benedict*, 295 F. Supp. 3d at 656–57.

[6] For example, in *Walker,* the court found conspicuous a disclaimer that "was in all capital letters and set apart in a subparagraph entitled **'No Other Warranties.'**" 2021 WL 4887972, at *4 (emphasis in original). The *Walker* court explicitly emphasized, however, that unlike cases dealing with lengthy documents, the manual at issue was "only 16 pages with the disclaimer located on page 15." *Id.* Further, the court noted that

> [t]he manual include[d] 13 pages of instructions on use and assembly and at the bottom of each page in a red box it state[d], "READ THIS MANUAL IN ITS ENTIRETY PRIOR TO USING THIS PRODUCT." On the 14th page, the user [was] instructed to fill out and mail the included registration card or submit a similar card on the company website.

*Id.* The disclaimer appeared on the page "immediately following the registration card." *Id.*

In *Waytec Electronics Corp. v. Rohm & Haas Electrical Materials, LLC*, the plaintiff did not contest that the disclaimer was conspicuous. 459 F. Supp. 2d 480, 493 (W.D. Va. Oct. 27, 2006). Rather, it "argued that [the] defendants' fraud precluded them from enforcing those disclaimers." (*Id.*) Indeed, *Waytec* bears almost no resemblance to the facts before the Court and dealt with a disclaimer printed on the backside of a sales invoice in a dispute between merchants.

A holistic assessment of the disclaimer in the context of the Manual reveals that that the language is not conspicuous. To begin with, the disclaimer appears on the thirtieth page of a busy and colorful owner's manual—sandwiched just between a troubleshooting guide and a page titled "Pressure Cooking Notes" and then followed by another thirty plus pages of recipes. (ECF No. 11-1.) Although the heading of the warranty section appears in a large, bolded box, it is identical to every other heading in the Manual. (*Compare* "Warranty" heading on p. 30, *with* "Additional Safeguards" heading on p. 9; "Parts Description" heading on p. 12; *and* "Functions" heading on p. 22.) Nothing about the "Warranty" header would draw the user's attention to the thirtieth page or the disclaimer thereon. Further, while the "Warranty" section is listed in the Manual's table of contents, (*id.* at 6), "[t]he 'Warranty' entry . . . is not at all distinct from other entries such as 'Poultry,' and does not indicate that it contains a disclaimer" or otherwise limits a consumer's rights, (ECF No. 11, at 7).[7] NuWave correctly asserts that a conspicuous writing need not

---

> Each invoice that [the defendants] sent to Waytec conspicuously displayed on its reverse side the following disclaimers under the heading **"DISCLAIMER OF ALL OTHER WARRANTIES:"** "THE FOREGOING [EXPRESSED WARRANTIES] ARE THE SOLE WARRANTIES MADE BY THE SELLER CONCERNING THE PRODUCTS. THERE ARE NO OTHER WARRANTIES, ORAL OR WRITTEN, AND, IN PARTICULAR, THERE IS NO IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE."

*Id.* at 493 n.14.

Finally, *Armco, Inc. v. New Horizon Development Co. of Virginia*, 229 Va. 561, 566, 331 S.E.2d 456, 459 (1985), was a contract dispute between two merchants decided "prior to the adoption of the holistic analysis approach for evaluating the conspicuity of disclaimer language." (ECF No. 11, at 11.) In any event, the *Armco* court spent little time explaining its rationale, and the disclaimer at issue was significantly more straightforward and included the words "limited" and "disclaimed." *See Armco*, 229 Va. at 562–64, 331 S.E.2d at 459–59.

[7] *See Benedict*, 295 F. Supp. 3d at 659 (finding disclaimer inconspicuous when table of contents entry "(1) [was] not stylistically distinct from the other table of contents entries; (2) d[id]

necessarily be in colored ink or call a reader's attention in a *specific* way, but their argument fails to consider the Manual as a whole.

Throughout the document, NuWave uses a variety of colored fonts, font effects, font sizes, pictures, symbols, and indentations to mark important information and draw the reader's eye. (*See, e.g.*, ECF No. 11-1, at 8, 11–12, 17–24, 29.) In contrast to these many eye-grabbing passages, the warranty page contains only black and white text of the same font type. (*Id.* at 30.) Although several sub-headings on the page are bolded, none of the headings indicate to the reader that the information below limits or disclaims a warranty. (*Id.*) Indeed, although the second heading is titled "The Warranty Does Not Cover," a reader glancing at this section would not find the disclaimer. (*Id.*) Instead, the disclaimer appears six lines up from the bottom of the page, buried under the header "Manufacturer's Obligation." (*Id.*) NuWave asserts that the disclaimer is in "contrasting typeface than the language around it," (ECF No. 12, at 4 (citing *Walker*, 2021 WL 4887972, at *4)), but as Partin points out, "[t]he section is comprised of approximately 231 words," and "[o]f those 231 words, more than half of them (134) are in capital letters," (ECF No. 11, at 9). *See, e.g., Hoffman v. Daimler Trucks N. Am., LLC*, 940 F. Supp. 2d 347, (W.D. Va. 2013) (finding disclaimer on the back of a two-page "Buyer's Order" inconspicuous where "[t]he heading of the disclaimer clause [wa]s of the same font type and size as those for the other paragraphs," "the disclaimer clause [wa]s not set off from the other paragraphs . . . in any distinctive way," the font size and color of the clause was the same as others, and "[a]lthough the disclaimer clause [wa]s in capital letters, two other paragraphs on the back page [were] also in capital letters").

Finally, NuWave suggests that the admonition on page seven to "read all instructions,"

---

not indicate that the limited warranty includes a disclaimer of any kind; and (3) . . . d[id] not require the purchaser to sign nearby or otherwise become aware that his legal rights could be affected by the catalogue's final pages").

8

ensures that all users read the entirety of the Manual and thus do not miss the disclaimer on page thirty. (ECF No. 12, at 3–4.) This argument is unpersuasive. First, a reasonable user could assume that the directive refers to the list of fourteen instructions immediately below the header. Alternatively, a reasonable user could assume that the directive refers to the "instructions" sections of the Manual and not to the entire document, which includes recipes and sections on "Pressure Caning" and "Troubleshooting" that are only applicable to some users' needs. (*See* ECF No. 11-1, at 6.) Finally, the directive on page seven bears little resemblance to warnings relied on by other courts. *Compare George,* 425 F. Supp. 3d at 636–37 (finding disclaimer was not conspicuous when located on page 60 of a 62-page manual and did not invite the individual to read its terms or sign the disclaimer), *with Walker*, 2021 WL 4887972 at *4 (finding disclaimer conspicuous where the bottom of each page contained a red box stating "READ THIS MANUAL IN ITS ENTIRETY PRIOR TO USING THIS PRODUCT").

## IV. <u>CONCLUSION</u>

For the reasons outlined above, the Court concludes that NuWave's "disclaimer" is not conspicuous. The Court will, therefore, deny NuWave's partial motion to dismiss. (ECF No. 8.)

The Court shall issue an appropriate Order.

Let the Clerk mail a copy of this Opinion to all counsel of record.

Date: 13 May 2022
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge